IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JABREE ROBERTSON | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| GEO GROUP, INC. et al. | : | NO. 22-1032 |

MEMORANDUM

Bartle, J.                                          June 16, 2022

Plaintiff Jabree Robertson brings this action under 42 U.S.C. § 1983 against defendants Geo Group, Inc. and Ronald B. Phillips, a physician employed at Geo Group.  Robertson alleges that while he was a pretrial detainee at George W. Hill Correctional Facility, defendants violated his Fourteenth Amendment rights when they were deliberately indifferent to his medical needs related to an injury to his hand and wrist. Before the court is the motion of Geo Group and Phillips to dismiss Robertson's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure

I

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the light most favorable to the plaintiff.  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

233 (3d Cir. 2008); <u>Umland v. PLANCO Fin. Servs., Inc.</u>, 542 F.3d 59, 64 (3d Cir. 2008).

Rule 8 requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Supreme Court has explained, a complaint need not include "detailed factual allegations," but it must state "more than labels and conclusions" and must provide factual allegations "enough to raise a right to belief above the speculative level." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679–80 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Iqbal</u>, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'shown'--'that the pleader is entitled to relief.'" <u>Id.</u> at 679 (citing Fed. R. Civ. P. 8(a)(2)).

II

The following facts are assumed to be true for present purposes. Robertson suffered a serious injury to his left wrist and hand when members of the United States Marshals Service took Robertson into custody on March 18, 2020. The Marshals took him to the Crozer-Chester Medical Center emergency room where he was evaluated by medical staff. He was diagnosed with "injury to

-2-

the scapholunate ligament, injury to his left wrist, including a widening of the scapholunate joint, dorsal intercalary segmental instability pattern, periarticular osteopenia and articular erosion involving the base of the 5th metacarpal." His left hand, wrist, and forearm were placed in a splint and wrapped in an ace bandage. He was advised to see a hand specialist as soon as possible.

Later that day, Robertson was transferred to George W. Hill Correctional Facility. At all relevant times defendant Geo Group operated this facility. As part of his intake, a nurse practitioner assessed him. She noted that Robertson had suffered a left scapholunate ligament injury. She authorized Robertson to continue to wear his split and ace bandage. She also requested that he see a doctor at George Hill and noted on his chart that "he needs to see a hand surgeon."

Defendant Ronald B. Phillips is a physician and the medical director at George Hill. Phillips learned of Robertson's injury and the nurse practitioner's assessment on March 19. Nonetheless, Phillips did not see Robertson until four days later. In total, this initial meeting with Phillips lasted "a few minutes." At their visit, Robertson said he was in serious pain and relayed the recommendation of the Crozer-Chester Medical Center staff that he see a hand specialist and undergo wrist surgery. Phillips did not act on this

-3-

recommendation.  Instead, he ordered Robertson to undergo an x-ray.

Robertson's hand and wrist were x-rayed on March 26. Phillips viewed the x-ray the following day.  On March 30, Robertson met with Phillips and reiterated that he was still in serious pain and that he was told he needed to see a hand specialist.  Phillips did not take any actions to treat Robertson's injury at this appointment.

A month later, on April 30, the two met again. Robertson again relayed that he was in pain and in need of a consult with a hand specialist.  Phillips looked at Robertson's hand but again declined to order any further course of treatment.

Phillips's inaction continued for over a year.  During that time, Robertson filed at least four medical requests related to his wrist and hand pain, on August 20 and December 14, 2020, and on April 9 and April 24, 2021.  According to Robertson, Phillips was aware of all these requests.  During this time, Phillips saw Robertson on June 26, 2020, and January 12, 2021.  At each visit, Robertson reminded Phillips of his need for surgery.

At Robertson's annual physical examination on March 16, 2021, Robertson stated that he was still in pain.  He was told that his referral to a hand specialist was "forth coming."

-4-

Robertson finally began to make progress in his quest to see a hand specialist in spring 2021.  On April 26, he was examined by a physician's assistant who noted that he still needed to be referred to an outside specialist.  This note was relayed to Phillips.  Robertson and Phillips met again on May 5, 2021.  Phillips ordered an x-ray for Robertson's wrist and hand, which was taken on May 10.  After Phillips viewed the x-ray the following day, he told Robertson that he would arrange for him to see a specialist.

Robertson was seen by a hand specialist, Dr. Steven Cash, at Lankenau Hospital on June 10, 2021.  Cash diagnosed Robertson with a "complete rupture of the scapholunate ligament and subluxation of the scaphoid bone in his left wrist."  Cash confirmed that this injury had been present for fifteen months. Cash performed surgery on Robertson's wrist on October 13, 2021. He was unable to repair or reconstruct the injured ligaments. Instead, he performed a complete scaphoid excision and intercarpal fusion.

Robertson was discharged back to George Hill later that day with a note indicating that he needed to see Cash for a follow-up visit.  On October 18, 2021, Robertson and Phillips met again.  Phillips noted Robertson's need for a follow-up visit but never made the requisite referral.

Since the surgery, Robertson suffers from permanent
pain as well as limitation of motion and function in his left
and wrist.  He maintains that if he had been seen by a hand
specialist "within a few weeks of the injury," his wrist could
have been fully repaired or reconstructed.

In this suit, Robertson alleges that Geo Group and
Phillips each violated his Fourteenth Amendment right to
adequate medical care by denying him a referral to a hand
specialist and ultimately hand surgery for over 15 months.

IV

Defendants argue that Robertson has failed to allege
that Geo Group provided deficient medical care as part of a
policy or custom, as is required to state a claim of § 1983
liability against a private entity-state actor.  See Monell v.
N.Y. Dep't of Social Servs., 436 U.S. 658 (1978).  Indeed, a
§ 1983 plaintiff may sue a private-entity state actor only for
injuries attributable to a policy, practice, or custom.  Sanford
v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (citing Monell, 436
U.S. at 691).

Robertson alleges that his injury was caused by Geo
Group's "affirmative policy of denying medical care to an inmate
solely for cost-saving reasons."  He alleges that defendant
Phillips, as the medical director at George Hill, had the final
decision-making authority to set policies on the medical care of

-6-

its prisoners.  He notes further that "Geo Group, as a for-profit prison firm, has a policy of maximizing profits at the expense of the traditional goals of the criminal justice system, including providing needed medical care to inmates at jails and prisons they run."

Defendants argue that these allegations are too conclusory to survive a motion to dismiss under Rule 12(b)(6). In support, they cite Winslow v. Prison Health Servs., 406 F. App'x 671 (3d Cir. 2011), in which our Court of Appeals rejected a Monell claim over deliberate indifference to a serious medical need based on an allegation that the prison had denied medical treatment for cost-saving reasons.  The Court said it would not credit the prisoner's "naked assertion that [the prison] considered cost" in deciding his course of treatment, since "prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment."  Id. at 674.  Specifically, the Court deemed the prisoner's claim "conclusory" because he failed to set out in his complaint "(1) what the relevant policies are, (2) what basis he has for thinking that 'policies to save money' affected his medical treatment, or (3) what specific treatment he was denied as a result of these policies." Id.

Winslow, a non-precedential opinion, does not foreclose all inmate medical treatment claims under Monell predicated on allegations of cost-saving policies. Rather, several district judges in this circuit have allowed such claims to advance beyond the pleading stage. See, e.g., O'Donnell v. Smith, Civ. A. No. 16-1149, 2019 WL 2588366, at *5 (M.D. Pa. April 19, 2019), report and recommendation adopted, 2019 WL 2577333 (M.D. Pa. June 24, 2019); Robinson v. Corizon Health, Inc., Civ. A. No. 12-1271, 2016 WL 7235314, at *13 (E.D. Pa. Dec. 13, 2016); Stewart v. Wenerowicz, Civ. A. No. 12-4046, 2015 WL 5092865, at *16 (E.D. Pa. Aug. 27, 2015); Shultz v. Allegheny Cnty., 835 F. Supp. 2d 14, 22-23 (W.D. Pa. 2011).

Here, Robertson has alleged facts sufficient to survive a motion to dismiss on his Monell claim against Geo Group. Robertson has alleged that Geo Group maintains a policy of denying medical treatment to save money, that this policy delayed his hand specialist consult and surgery, and that the application of the policy lead to permanent injury to his hand and wrist. Although his allegations could be more precise, they satisfy the three deficiencies highlighted in the prisoner's complaint in Winslow and are no more conclusory than those permitted by the several district judges in the cases listed above. At this early juncture in the litigation, his Monell claim must be allowed to advance. Accordingly, the

-8-

motion of defendants to dismiss Robertson's Fourteenth Amendment claim against Geo Group is being denied.

V

Defendants next argue that Robertson has failed to allege that Phillips exhibited deliberate indifference to his serious medical need.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment."  Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation omitted).  The Fourteenth Amendment offers the same protection to pretrial detainees such as Robertson.  Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003).

Defendants do not dispute that Robertson's wrist and hand injury, as described in his complaint, constitutes a serious medical need.  Rather, they contend that Robertson has not alleged that Phillips's treatment was sufficiently inadequate.  They note that Robertson acknowledges Phillips "conducted numerous examinations, allowed [Robertson] to wear a bandage and splint, ordered two sets of x-rays, and eventually authorized a surgical consult and surgery for [Robertson]." Those facts, defendants assert, make out a claim of mere dissatisfaction with Phillips's medical treatment decisions, which is inactionable under the Fourteenth Amendment.

-9-

Our Court of Appeals has noted that an inmate may establish a doctor's deliberate indifference when the doctor "delays necessary medical treatment based on a non-medical reason." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A doctor may be liable also for "persist[ing] in a particular course of treatment 'in the face of resultant pain and risk of permanent injury.'" Id. (citing White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990)); see also Imhoff v. Temas, 67 F. Supp. 3d 700, 711 (W.D. Pa. 2014). Moreover, "[g]rossly negligent behavior can also constitute deliberate indifference, as can a doctor's choice to take an 'easier and less efficacious course of treatment' in response to a serious medical need." Reed v. Cameron, 380 F. App'x 160, 162 (3d Cir. 2010) (quoting Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987)).

Robertson's allegations easily meet this standard. He avers that hand surgery was a necessary medical treatment and that Phillips did not refer him to receive that treatment for over 15 months. Phillips's failure to refer Robertson to a hand specialist who could perform this surgery led to permanent injury. Furthermore, even if the x-rays and visual inspections that Phillips performed in his numerous meetings with Robertson over the fifteen months before Robertson was referred to a hand specialist could be considered "treatment," Robertson at the

-10-

very least plausibly alleges that Phillips was grossly negligent.  That is all that is required to plead a Fourteenth Amendment claim for denial of medical treatment.  Accordingly, the motion of Phillips to dismiss Robertson's claim is being denied.

VI

For the reasons stated above, the motion of defendants Geo Group and Ronald B. Phillips will be denied.